```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF NEBRASKA

 3

 4   UNITED STATES OF AMERICA,        )      4:17CR3143
                                      )
 5            Plaintiff,              )
                                      )   Lincoln, Nebraska
 6        vs.                         )   May 8, 2018
                                      )   9:02 a.m.
 7   BAILEY MARIE BOSWELL,            )
                                      )
 8            Defendant.              )

 9

10           TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

11             BEFORE THE HONORABLE CHERYL R. ZWART

12                UNITED STATES MAGISTRATE JUDGE

13

14   APPEARANCES:

15   For the Plaintiff:      Mr. Steven A. Russell
                             Ms. Lesley Woods
16                           U.S. ATTORNEY'S OFFICE-LINCOLN
                             100 Centennial Mall North
17                           Suite 487, Federal Building
                             Lincoln, Nebraska 68508
18

19
     For the Defendant:      Ms. Jessica L. Milburn
20                           FEDERAL PUBLIC DEFENDER'S
                             OFFICE-LINCOLN
21                           100 Centennial Mall North
                             112 Federal Building
22                           Lincoln, Nebraska 68508

23

24   Proceedings transcribed from audiotape, transcript produced
     with computer.
25
```

```
 1                        I-N-D-E-X

 2                    DIRECT  CROSS  REDIRECT  RECROSS

 3   GOVERNMENT'S WITNESSES:

 4     None

 5   DEFENDANT'S WITNESSES:

 6     None

 7   EXHIBITS:                        OFFERED   RULED

 8     None

 9
```

```
10                                           PAGE

11   FINDINGS OF THE COURT.................................  23

12   CERTIFICATE OF TRANSCRIBER...........................  23
```

```
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (On May 8, 2018, at 9:02 a.m., the following proceedings were

2    held:)

3                    THE COURT:  We're on the record in Case No.

4    4:17CR3143, United States of America versus Bailey Marie

5    Boswell.  Counsel, please enter your appearance.

6                    MR. RUSSELL:  Your Honor, please enter the appearance

7    of Steven Russell and Lesley Woods on behalf of the United

8    States.

9                    MS. MILBURN:  And Jessica Milburn appearing with Ms.

10   Boswell.

11                   THE COURT:  Ms. Boswell, you are here today because

12   I've been told that you want to enter a plea of guilty; is that

13   true?

14                   THE DEFENDANT:  Yes, ma'am.

15                   THE COURT:  I need to explain to you that I am not

16   your sentencing judge and I'm not the judge who will determine

17   whether this guilty plea is accepted and whether your plea

18   agreement is accepted.  Those matters will be taken up by Judge

19   Gerrard who is your sentencing judge.  But what I can do for

20   you today is gather some information from you and make a

21   recommendation to Judge Gerrard on those issues.  Do you agree

22   to proceed before me?

23                   THE DEFENDANT:  Yes, ma'am.

24                   THE COURT:  Please raise your right hand.

25                   <u>BAILEY MARIE BOSWELL, DEFENDANT, SWORN</u>

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  You're now under oath.  You've sworn to

3    tell the truth which means if you lie during this proceeding

4    you can be separately prosecuted for the crime of perjury.  Do

5    you understand that?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  At this time I'm going to have the

8    government explain to you the charge to which you intend to

9    plead guilty and the possible penalty for that charge.

10     Mr. Russell.

11          MR. RUSSELL:  Ms. Boswell, you're charged in Count X

12   of the superseding indictment with a violation of Title 18,

13   United States Code Section 2314, which is essentially

14   interstate transportation of stolen property or property taken

15   by fraud.

16     The maximum penalty if you're found guilty of that charge

17   is up to 10 years in prison, a fine of up to $250,000, or both

18   such fine and imprisonment, a term of supervised release of up

19   to three years following any period of incarceration, and a

20   $100 special assessment.  Ma'am, do you understand the nature

21   of the crime charged and the maximum possible penalties?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Having heard the crime charged and the

24   possible penalty is it still your intent to plead guilty?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  I have in front of me a petition to enter

2     a plea of guilty and a plea agreement.  Do you have those

3     documents in front of you?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  They appear to have been signed by you on

6     May 4th; is that right?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  When you went over these documents was

9     your attorney with you?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Going to the petition -- the document with

12     all those questions and answers in it -- did you read the

13     questions?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Did your attorney explain the questions to

16     you?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Did you answer the questions out loud?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Were the answers you stated out loud the

21     truth?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Did your attorney write down your answers?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Did she write them down correctly?

```
 1                    THE DEFENDANT:  Yes, ma'am.

 2                    THE COURT:  And after going through the document did

 3      you sign it?

 4                    THE DEFENDANT:  Yes, ma'am.

 5                    THE COURT:  Going to the plea agreement, did you read

 6      the plea agreement?

 7                    THE DEFENDANT:  Yes, ma'am.

 8                    THE COURT:  Did your attorney explain the plea

 9      agreement to you?

10                    THE DEFENDANT:  Yes, ma'am.

11                    THE COURT:  Were there any questions about the plea

12      agreement that she was unable to answer?

13                    THE DEFENDANT:  No, ma'am.

14                    THE COURT:  And after going through the plea agreement

15      did you sign it?

16                    THE DEFENDANT:  Yes, ma'am.

17                    THE COURT:  On the 4th of May when you went over these

18      documents were you under the influence of drugs or alcohol or

19      anything that would impair your thinking?

20                    THE DEFENDANT:  No, ma'am.

21                    THE COURT:  Are you under the influence of anything

22      today?

23                    THE DEFENDANT:  No, ma'am.

24                    THE COURT:  Has anybody threatened you in any way to

25      get you to plead guilty?
```

1              THE DEFENDANT:  No, ma'am.

2              THE COURT:  Has anybody promised you anything other

3      than the promises in the plea agreement itself to get you to

4      plead guilty?

5              THE DEFENDANT:  No, ma'am.

6              THE COURT: Do you understand that if the Court accepts

7      your plea of guilty you will be found guilty of a felony?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Do you understand you have the right to

10     plead not guilty and make the government try to prove this case

11     at trial?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand you are giving up your

14     trial rights by pleading guilty?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  You've been represented in this case by

17     Ms. Milburn; is that correct?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Do you believe that she has investigated

20     this case sufficiently so that you know what to do today?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Are you satisfied with her representation?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Do you understand that if you chose to go

25     to trial you would have the right to counsel representation at

1    the trial at no cost to you?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  As that applies to you, Ms. Milburn would

4    be with you at that trial, she would represent your interests

5    and she would never send you a bill for that service.  Do you

6    understand that?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Do you understand that if you chose to go

9    to trial you would have a jury trial?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  Do you understand that at that trial you

12   would have the right to see and hear any witnesses who testify

13   against you and have them cross-examined on your behalf?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Do you understand you would have the right

16   to call witnesses for you and if they would not come

17   voluntarily you could get a court order called a subpoena to

18   make them come and testify?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  Do you understand that if you chose to go

21   to trial you could testify yourself if you wanted to or you

22   could exercise your right to remain silent?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  And do you understand that if you remain

25   silent at the trial the jury would not be allowed to consider

1    that silence in deciding whether you are guilty?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And finally, do you understand that if you

4    chose to go to trial the government would not get a conviction

5    against you unless it was able to prove to every single juror

6    that you were guilty beyond a reasonable doubt?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Are you willing to give up all of those

9    trial rights and plead guilty in this case instead?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  With a guilty plea you will have a felony

12   record, and with that felony record comes a loss of civil

13   rights.  Those rights include the right to vote, the right to

14   serve in a jury, the right to hold a public office, the right

15   to carry a weapon.  You can also lose federal benefits.  But

16   you will lose rights.  Do you understand that?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  And knowing that you will lose civil

19   rights are you willing to plead guilty?

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  You're looking at a sentence in this case

22   under the statutes of up to 10 years in prison, a possible fine

23   of up to $250,000 could be imposed in addition to any term of

24   imprisonment, three years -- up to three years of supervised

25   release, and a $100 mandatory special assessment.  Is that your

1    understanding of what you're facing?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Has Ms. Milburn explained the sentencing

4    guidelines to you?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Has she explained that those guidelines

7    provide the starting point that Judge Gerrard will look at in

8    determining what your sentence ought to be?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Do you understand that Judge Gerrard is

11   going to consider all of your relevant conduct in determining

12   your sentence?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  For example, he's going to consider such

15   things as how much money was involved; the facts underlying any

16   counts that the government intends to dismiss at the time of

17   sentencing; your criminal history and the extent of that

18   history.  Those types of things.  Do you understand that?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  And once Judge Gerrard determines all of

21   his findings and makes those findings, do you understand he can

22   sentence you within the guidelines you've talked about with Ms.

23   Milburn but he doesn't have to, he can --

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Do you understand he can go either above

1    or below those guidelines based upon his determinations?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Then once Judge Gerrard determines how

4    much time you will spend in prison, do you understand you will

5    be required to serve all of that time and the most you can get

6    off of that sentence is 54 days per year for good time served

7    and that's only if you can earn that good time while you're in

8    prison?  Do you understand that?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Now, after you've served your prison

11   sentence you may be placed on supervised release for up to

12   three years, and I want to make sure you understand what that

13   means.  At the time of sentencing Judge Gerrard is going to

14   include a list of rules that you have to follow after you get

15   out of jail.  Those rules are called conditions of release.  Do

16   you understand that?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Do you understand that if you violate

19   those rules you can be brought back to court and sent back to

20   jail?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  And do you understand that if you violate

23   those rules by committing another crime, your penalty or

24   sentence on that separate crime could be greater than it

25   otherwise would've been merely because you were still serving

1    the sentence in this case when you committed the next crime?

2    Do you understand that?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  You will be required to pay a $100

5    mandatory special assessment.  Were you aware of that?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  In cases such as this the government may

8    at the time of sentencing present evidence to Judge Gerrard to

9    explain the harm that you caused by your criminal conduct.

10   That is called restitution.  Do you understand that?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  In other words, if you've caused harm to

13   other people by your criminal conduct, you can be required to

14   pay for that harm.  Do you understand?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  And do you understand that at the time of

17   sentencing it is likely that the government will present

18   evidence of the extent of harm you've caused and ask the Court

19   to impose that as an additional term of your sentence?  In

20   other words, that you repay that.  Do you understand?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  You have a plea agreement with the

23   government which outlines your agreement regarding what should

24   happen at the time of sentencing.  Do you understand that this

25   agreement is between you and the government?  It is not

1    necessarily binding on Judge Gerrard.

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  At this time I'm going to have Mr. Russell

4    explain the terms of this plea agreement to you.  I want you to

5    listen as he does that.  I will ask you questions about what he

6    says.

7         Mr. Russell.

8              MR. RUSSELL:  Your Honor, the plea agreement in this

9    matter is that the defendant would plead guilty to Count X of

10   the superseding indictment.  In exchange for that plea of

11   guilty the United States would move to dismiss the remaining

12   counts of the superseding indictment at the time of sentencing.

13        The nature of the offense, the elements contained in the

14   offense, a factual basis, and the penalties are set forth in

15   the plea agreement; in addition to the fact that this agreement

16   is limited to the United States Attorney's Office for the

17   District of Nebraska and cannot bind any other federal, state

18   or local prosecuting, administrative or regulatory authority.

19        There is a non-binding recommended -- or at least

20   recommendations related to the sentencing guidelines contained

21   in the plea agreement calling for a base offense level of six.

22   The parties agree that the defendant should be held responsible

23   for a -- beyond a reasonable doubt for a loss of $200,192

24   reflecting her involvement in the -- in the case, which

25   increases her base offense level by ten levels, and that she

1   should also receive an increase of two levels under two

2   separate sections of the sentencing guidelines for a total of

3   four levels.

4        Restitution is also ordered in the -- or will be ordered in

5   the plea agreement and is set forth in the plea agreement for

6   the victims designated in the plea agreement.

7        With respect to departures, the defendant may request or

8   recommend additional downward departures or variances either

9   under the sentencing guidelines or under 18 U.S.C. Section

10  3553.  The government may oppose such recommendations.  And,

11  again, there is -- as the Court has already indicated there is

12  no limit as to the Court's authority to impose a sentence.

13       The defendant does agree to waive appeal and collateral

14  attack.  There is a provision in the plea agreement related to

15  that which limits the defendant's rights in those two areas.

16       The defendant also agrees to waive her right to withdraw

17  her plea of guilty pursuant to Rule 11(d) of the Federal Rules

18  of Criminal Procedure.  She may only withdraw her plea of

19  guilty in the event the Court rejects the plea agreement.

20       Your Honor, I believe those are the main points of the plea

21  agreement.

22            THE COURT:  Ms. Milburn, does that fairly summarize

23  the plea agreement?

24            MS. MILBURN:  It does, Your Honor.

25            THE COURT:  Ms. Boswell, did you listen as Mr. Russell

1    described the plea agreement?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Does his description match your

4    understanding of your agreement with the government?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  Under the terms of this plea agreement

7    you're agreeing that you should be held responsible beyond a

8    reasonable doubt for a loss of $200,192. Did you agree to that?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Are you responsible for that loss?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  The plea agreement also includes a waiver

13   of appeal and collateral attack.  I need to make sure you know

14   what you're giving up here.  Everything that's done by this

15   court is subject to being looked at by another court to make

16   sure it was done right.  The process is called an appeal.  And

17   the court that looks at it is the Eighth Circuit Court of

18   Appeals.  Do you understand?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Do you understand that under the terms of

21   this plea agreement you're giving up your right to that appeal

22   unless you are claiming that Ms. Milburn provided you with

23   ineffective assistance of counsel?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Collateral attack is different than an

1    appeal.  With a collateral attack you can challenge your

2    conviction and your sentence by claiming your constitutional

3    rights were violated.  Do you understand that?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Do you understand that under the terms of

6    this plea agreement you're giving up your right to that type of

7    proceeding as well, unless you are claiming that Ms. Milburn

8    provided you with ineffective assistance of counsel or you are

9    claiming that what you're admitting to here today is not a

10   crime?  Do you understand?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Do you understand that your waiver of

13   appeal and your waiver of collateral attack applies both to

14   your conviction and to the sentence you've not yet received?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Have you talked to Ms. Milburn about your

17   appeal rights and collateral attack rights?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  After having those discussions and

20   considering your options have you decided to give up your right

21   to appeal and your right to collateral attack with the

22   exceptions listed in the plea agreement?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Has anybody made any promises to you that

25   are not in this plea agreement?

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  Do you understand that whether you plead

3    guilty or whether you're found guilty at trial you could get

4    the same sentence?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Putting it another way, do you understand

7    there is no guarantee your sentence will be less because you

8    pled guilty instead of being found guilty by a jury?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  At this time then I'm going to have Mr.

11   Russell explain the factual basis for your plea.  In other

12   words, the key facts the government would present at trial if

13   this case went to trial.  Please listen while he does that.

14         MR. RUSSELL:  Your Honor, from on or about December

15   3rd, 2015, to on or about November 7th, 2017, the defendant,

16   along with Aubrey Trail, devised or participated in the

17   devising of a scheme to defraud and obtain money by means of

18   materially false and fraudulent pretenses, representations, and

19   promises, from persons that have been identified in the

20   indictment as M.E. and B.E.

21         The essence of the scheme to defraud is that Mr. --

22   beginning in 2015, Mr. Trail represented himself as Alan

23   Russell with a proposal to jointly purchase a gold coin and

24   share in the profits of the sale and approached M.E. and B.E.

25   with that -- with that proposition.

1    He falsely represented the value of the coin to be far in

2    excess paid by Russell.  He then attempted to facilitate the

3    sale of the coin through this entire period of the scheme and

4    asked for money from the victims in order to facilitate that

5    sale.

6    Beginning in February of 2017 the defendant became involved

7    in the scheme that Mr. Trail had started with the -- with the

8    victims.  The defendant set up false documents and websites to

9    convey the appearance of a legitimate transaction.  She either

10   contacted or had other persons contact the victims in order to

11   represent themselves as purported brokers for the sale of the

12   coin, and in order to falsely convey that the coin was a

13   legitimate transaction and that the sale was going to take

14   place.

15   In truth and fact, the defendant and Mr. Trail knew that

16   that was not the case and that the -- the money was being

17   used -- the money being used by the victims was being used for

18   the defendant's personal use and Mr. Trail's personal use.

19   With respect to Count X of the indictment, as part of the

20   scheme on October 20th of 2017, the defendant and Mr. Trail

21   caused and induced the victims, M.E. and/or B.E., to travel

22   from Kansas to Beatrice, Nebraska for the purpose of providing

23   currency to -- in this case to Mr. Trail and the defendant.

24   The defendant met with M.E. at a Walmart parking lot in

25   Beatrice, Nebraska.  M.E. provided the defendant with $5,000

```
 1    and a handgun that was to be used for sale -- at least

 2    purportedly be used for sale.

 3        The money was provided by M.E. to defendant in furtherance

 4    of the scheme and artifice to defraud regarding the alleged

 5    sale of the purported coin.  M.E. traveled from Hiawatha,

 6    Kansas to Beatrice, Nebraska in interstate commerce.

 7        That is what the evidence would show, Your Honor.

 8            THE COURT:  Ms. Milburn, do you agree if this case

 9    went to trial that evidence would go before a jury?

10            MS. MILBURN:  I do agree.

11            THE COURT:  Ms. Boswell, did you listen as the

12    government described the evidence against you?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  Is everything that Mr. Russell said true?

15            THE DEFENDANT:  Yes, ma'am.

16            THE COURT:  Do you know Aubrey Trail?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  Did you, starting in February of 2017,

19    assist him in a scheme or scam to get money from a person whose

20    initials are M.E. and another person, B.E., both of whom are

21    from Kansas?

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  Was the scam that you were assisting him

24    in trying to get money for a gold coin that Mr. Trail said was

25    worth a lot of money but wasn't really worth that much?
```

1            THE DEFENDANT:  Yes, ma'am.

2            THE COURT:  Were you serving in that capacity by

3 setting up false documents and websites to make it appear like

4 a legitimate transaction?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Do you agree that websites are a means of

7 conveying information across state lines?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  And do you agree that the information you

10 were placing on those websites was false?

11            THE DEFENDANT:  Yes, ma'am.

12            THE COURT:  Was the purpose of your conduct to act as

13 the alleged broker in trying to get money out of these people

14 for a coin that wasn't worth that much?

15            THE DEFENDANT:  Yes, ma'am.

16            THE COURT:  Were you trying to get the money for your

17 own purposes and that of Mr. Trail's?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  Going to October 20th of 2017

20 specifically, on that date did you travel to Beatrice,

21 Nebraska?

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  And did you meet up with somebody, in this

24 case M.E., who crossed from Hiawatha, Kansas into Nebraska to

25 give you $5,000 and a handgun for sale?

1             THE DEFENDANT:  Yes, ma'am.

2             THE COURT:  Was the $5,000 part of the scheme to

3     defraud and get money for a coin that wasn't worth much?

4             THE DEFENDANT:  Yes, ma'am.

5             THE COURT:  Did you know when you were doing this that

6     the coin wasn't worth what Mr. Trail was saying it was worth?

7             THE DEFENDANT:  Yes, ma'am.

8             THE COURT:  Anything else?

9             MR. RUSSELL:  Your Honor, I -- I think that the -- the

10    defendant should be asked, on October 20th did they induce M.E.

11    to travel from Kansas to Beatrice, Nebraska for the purpose of

12    giving her $5,000.

13            THE COURT:  Okay.  Thank you.  All right.

14        Ms. Boswell, what did you do to get this gentleman or

15    person from Kansas into Nebraska?

16            THE DEFENDANT:  I did nothing.  I just went there

17    because Aubrey told me to go.

18            THE COURT:  Okay.  And with respect to that, did you

19    understand that he was -- this person was coming into Nebraska

20    to give you $5,000 and a handgun for Mr. Trail?

21            THE DEFENDANT:  Yes, ma'am.

22            THE COURT:  And did you, as part of that process,

23    assist with that?

24            THE DEFENDANT:  Yes, ma'am.

25            THE COURT:  And did you, as you were assisting with

1    that, contact or have Mr. Trail contact M.E. from Kansas and

2    pull them into Nebraska to get this transaction done?

3                 THE DEFENDANT:  Yes, ma'am.

4                 THE COURT:  Anything else, Mr. Russell?

5                 MR. RUSSELL:  No, Your Honor.

6                 THE COURT:  All right.  Ms. Milburn?

7                 MS. MILBURN:  Nothing further.

8                 THE COURT:  All right.  Mr. Russell, do you believe

9    the guilty plea is knowing, intelligent and voluntary and that

10   there is a factual basis for it?

11                MR. RUSSELL:  Yes, Your Honor.

12                THE COURT:  Ms. Milburn, do you agree?

13                MS. MILBURN:  I agree.

14                THE COURT:  Ms. Boswell, do you want this Court to

15   accept your plea of guilty?

16                THE DEFENDANT:  Yes, ma'am.

17                THE COURT:  Do you have any questions of me before I

18   proceed?

19                THE DEFENDANT:  No, ma'am.

20                THE COURT:  Just one moment.  To the charge that on

21   October 20th of 2017, while in Nebraska, you, along with Aubrey

22   Trail, did cause and induce a person whose initials are M.E. to

23   travel from Kansas to Nebraska for the purposes of carrying out

24   a scheme to defraud -- in this case a scheme to defraud this

25   person from Kansas out of money for the sale of a coin that

1    wasn't worth much, or brokering such sale, and that you at that

2    time did receive $5,000 along with a handgun for the purported

3    resale, what do you plead?

4            THE DEFENDANT:  Guilty.

5            THE COURT:  I do find that your guilty plea is

6    knowing, intelligent and voluntary and that there is a factual

7    basis for it.  I will recommend to Judge Gerrard that he accept

8    your plea of guilty.  I will also recommend that he accept your

9    plea agreement.  He'll take up the issue of your plea agreement

10   at the time of sentencing.  We're looking at a sentencing date

11   of August 3rd at 9:00 a.m.  Does that work for everyone?

12           MR. RUSSELL:  Yes, Your Honor.

13           MS. MILBURN:  Yes, Your Honor.

14           THE COURT:  Is there anything else we need to take up?

15           MR. RUSSELL:  No, Your Honor.

16           MS. MILBURN:  Not today, Your Honor.

17           THE COURT:  We are in recess.

18       (9:24 a.m., recessed.)

19       I, Vicki L. Jarchow, Transcriber, certify that the

20   foregoing is a correct transcript from the official electronic

21   sound recording of the proceedings in the above-entitled

22   matter.

23

24   Vicki L. Jarchow                May 21, 2018

25                                   Date